# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,          :
                                          :      ID No. 1909016095
                                          :

        v.                        :

THEOPALIS K. GREGORY,      :

        Defendant.          :

Submitted: December 8, 2021
Decided:  January 12, 2022

## ORDER

*Defendant's Motion for Judgment of Acquittal –* **DENIED**

On this 12th day of January 2022, after considering Defendant Theopalis K. Gregory's motion for judgment of acquittal, and the State's opposition, it appears that:

1.  The State charged Mr. Gregory with two counts of official misconduct and one count of profiteering.  The charges stemmed from actions he allegedly took or refrained from taking while serving as the President of the Wilmington City Council. The State's allegations centered on Mr. Gregory's efforts, while in office, to secure start-up funding for Student Disabilities Advocate, Inc. ("SDA"), a non-profit corporation.

2.  A New Castle County jury heard the case over four days, and the trial

concluded on November 15, 2021. The following facts are those presented at trial, considered in the light most favorable to the State. SDA formed in 1996 and operated in some capacity until early 1998. Then, it ceased paying franchise taxes and became dormant. Years later, on October 13, 2016, Mr. Gregory revived the certificate of incorporation with Delaware's Division of Corporations. At the time he filed the certificate, he still served as Council President. When he contemporaneously filed an annual franchise tax report for SDA, he identified himself as SDA's President.

3. Mr. Gregory served as Council President until January 3, 2017; Ms. Hanifa Shabazz succeeded him in office. During the first half of the 2017 fiscal year, Mr. Gregory, as Council President had access to a $250,000 Discretionary Grant Fund (the "Fund"). At the time, the City gave the Council President the discretion to award money from the Fund to qualifying Section 501(c)(3) organizations of his or her choice. Because the City renewed the Fund each fiscal year, the $250,000 in discretionary money straddled Mr. Gregory and Ms. Shabazz's terms, which transitioned at the end of the calendar year. Nevertheless, Mr. Gregory had already committed $206,400 of the Fund's Fiscal Year 2017 monies as of November 10, 2016.

4. On November 10, 2016, Mr. Gregory emailed his Chief of Staff and Ms. Shabazz. In the email, he made "clear that $40,000 of the remaining $250,000 is earmarked for SDA."[1] In fact, at that time, only $43,000 remained in the Fund to be used during the second half of Fiscal Year 2017. Other evidence, that the jury was free to accept, supported that Mr. Gregory repeatedly exerted personal pressure on Ms. Shabazz to award money from the Fund to SDA.

5. The parties did not dispute that the Fund permitted disbursements to only

---

[1] Wilm. Ethics Comm'n Agreed Disposition, ⁋ 6.

Section 501(c)(3) organizations. After Ms. Shabazz assumed office in January 2017, she authorized the release of the first installment to the Police Athletic League of Wilmington ("PAL-W"). She did so because SDA did not qualify as a Section 501(c)(3) organization. Mr. Gregory further acknowledged in a stipulation that he filed with the Wilmington Ethics Commission that he received a $15,000 personal benefit from the money that made its way to SDA through PAL-W.[2]

6. When the State rested after its case in chief, Mr. Gregory moved for judgment of acquittal on all three charges. The Court granted his motion for one: as to profiteering as proscribed by 11 *Del. C.* § 1212(1).[3] As the Court explained, the trial evidence, when viewed in the light most favorable to the State, would not have justified a reasonable jury's finding that Mr. Gregory "acquire[d] a *pecuniary* interest in any property, transaction or enterprise which may be affected by the official action."[4]

7. The indictment alleged that he committed profiteering in October 2016; the State's evidence was insufficient to prove the charge of profiteering for two reasons. First, the indictment alleged that Mr. Gregory acquired a pecuniary interest in the enterprise in October 2016. The only evidence that arguably supported that he acquired a *pecuniary interest* in the enterprise during that time-period was (1) his filing of a certificate of revival for SDA in October 2016, and (2) documentation that he served as the non-profit SDA's President in October 2016. Based upon that evidence alone, the State did not meet its *prima facie* burden of proving that Mr. Gregory acquired a *pecuniary* interest in the non-profit SDA in

---

[2] Mr. Gregory disputed this at trial. The jury, as finder of fact, had the responsibility to judge his credibility, the credibility of other witnesses, and to decide the appropriate weight to assign to his adopted admission found in the Ethics Commission stipulation.

[3] *See* Super. Ct. Crim. R. 29(a) (providing for the Court to enter judgment of acquittal on one or more offenses, after the evidence in the State's case is closed if the evidence is insufficient to sustain a conviction of such offense or offenses).

[4] *See* 11 *Del. C.* § 1212(1) (providing for the offense of profiteering) (emphasis added).

October 2016. Second, the Court independently granted the motion for judgment of acquittal on the profiteering count because the evidence was insufficient to support the element that Mr. Gregory *acquired* an interest in the enterprise in October 2016. Namely, SDA incorporated in 1996. Although the State submitted (1) a copy of the certificate of revival and (2) the stipulated Wilmington Ethics Commission Agreed Disposition into evidence, the State offered no additional evidence to place the two documents into context. The State's evidence did not support a reasonable jury's finding of guilt on the charge.

8. Mr. Gregory also moved, mid-trial, for a judgment of acquittal regarding the two counts of official misconduct. After the Court considered the parties' arguments and the evidence, it denied the motion as to those two counts and explained its reasons on the record.

9. Thereafter, at the conclusion of the case, the jury acquitted Mr. Gregory of one of the two counts of official misconduct. Specifically, the jury acquitted him of official misconduct pursuant to 11 *Del. C.* § 1211(2). The jury found him guilty, however, of the other count of official misconduct pursuant to 11 *Del. C.* § 1211(3).

10. After discharge of the jury, Mr. Gregory now moves for a judgment of acquittal regarding official misconduct pursuant to §1211(3).[5] When deciding this motion, the Court must determine whether a reasonable jury could find, beyond a reasonable doubt, that the defendant was guilty of all elements of the offense.[6] When the Court reviews the evidence for this purpose, it must do so in the light most favorable to the State.[7] It must also draw all reasonable inferences from the evidence

---

[5] *See* Super. Ct. Crim. R. 29(c) (providing the mechanism and timing for filing a motion after discharge of the jury).
[6] *Cushner v. State*, 214 A.3d 443, 446 (Del. 2019).
[7] *Id.*

4

in the State's favor.[8]  Finally,  the Court must consider the evidence presented in the entire trial, as opposed to merely what the State presented during its case in chief.[9]

11.  Count 2 in the indictment alleges the type of official misconduct defined in  11 *Del. C.* §1211(3).  Namely, Count 2 provides, in relevant part:

> [Mr. Gregory] as a public servant, did while intending to obtain a personal benefit, . . . perform *official functions* in a way intended to benefit [Mr. Gregory's] own property or financial interests under circumstances in which [his] actions would not have been reasonably justified in consideration of the factors which ought to have been taken into account in performing official functions.[10]

In his motion,  Mr. Gregory's focuses on a single element of the offense:  whether Mr. Gregory's actions could have qualified as "official functions."

12.  Prior  to  trial, Mr. Gregory  filed  a  pre-trial motion  requesting a bill of particulars, and the Court ordered the State to respond.[11]  In the State's response, it alleged that the official functions at issue were Mr. Gregory's "exercise [of] control over the President's Grant Funding [and his earmarking] of public money for his non-profit."[12]  After Mr. Gregory received the State's response, he made no further application or request that the State provide a more definite response.

13.  Mr. Gregory now argues that the Court must grant his motion of judgment of acquittal for two reasons.  Both contentions challenge what can properly qualify as "official functions."   First, he contends that the State and the Court failed to "legally define official functions."[13]  Second, he contends that the evidence was

---

[8] *Id.*

[9] *See* 7 Charles A. Wright & Arthur R. Miller, *Introduction of Evidence by Defendant*, Federal Practice and Procedure § 463 (4th ed. 2021) (citing cases explaining that the Court evaluates a renewed motion for judgment of acquittal based on all the evidence in the case, not just the evidence presented in the state's case in chief).

[10] D.I. 29 (Reindictment, Count II (Oct. 25, 2021)) (emphasis added).

[11] D.I. 30 (Def.'s Mot. for B. of Particulars).

[12] D.I. 31 (State's Resp.).

[13] *See* D.I. 40 (Def.'s Mot. for J. of Acquittal).

5

insufficient to support the jury's finding that "earmarking" public funds qualified as an official function.  He contends that nothing in City of Wilmington parlance or practice contemplates earmarking funds.  Accordingly, he asserts that his actions could not have been "official."   More specifically, he argues that his email and repeated overtures to the incoming council president instructing her that the money was "earmarked" for SDA did not qualify as an "official function."

14.  The State counters that the question was a factual issue for the jury.  First, the State stresses that "official function" is not defined in the Delaware Code.  Second, it emphasizes that Mr. Gregory did not request a jury instruction that defined official function; nor did he object to the jury instructions as given.   Third, the State stresses the ubiquitous authority that recognizes that when the Delaware Code does not specifically define a term in the statute that creates a criminal offense, courts instruct juries to give words their commonly accepted meanings.[14]   Thus, the State relies upon the *Merriam Webster's Dictionary* to define the two terms.[15]   When doing so, the State accurately recognizes how a reasonable jury should interpret the phrase:  that is, conduct where the actions complained of  "relate to the job or duty of a person in an office, position, or trust."[16]

15.  Turning to the Court's analysis, the State correctly summarizes the controlling law regarding the fact versus matter of law distinction.   It was for the trier of fact to decide what were "official functions," as it was for all other elements of the offense.  As the Delaware Supreme Court recognized in its decision in *Rogers v. State,* when the Criminal Code does not define a word used in the definition of a

---

[14] *See e.g.,* 11 *Del. C.* § 221(c) (providing "[i]f a word used in this Criminal Code is not defined herein, it has its commonly accepted meaning . . ."). Here, the Court instructed the jury consistently with § 221(c).

[15] *See* D.I. 41 (State's Resp. in Opp., ℙ 7) (citing the Merriam-Webster dictionary definitions of "function" and "official").

[16] *Id.*

criminal offense, the jury must apply its commonly accepted meaning.[17]  Here, the parties agree that the terms are not defined in Delaware's Criminal Code. Accordingly, the jury is presumed to have applied the common, ordinary meaning to the phrase "official functions."  The jury's decision to find Mr. Gregory's conduct to be official was sufficiently supported by the evidence.  Frankly, had the jury found it to not be official, its decision would have been unreasonable on this record.

16.  More specifically, the following trial evidence supported the jury's finding that Mr. Gregory performed official functions when he steered public money to SDA:  (1) the Council President had the sole authority to determine who received public money from the Fund; (2) Mr. Gregory served as Council President when he claimed in his email to his successor that the funds were already earmarked for SDA and when he made repeated overtures to Ms. Shabazz;  (3) allocation of the total available $250,000 in funds for the 2017 fiscal year fell to Mr. Gregory's *and* Ms. Shabazz's discretion because their terms of office straddled the same fiscal year; (4) he admitted in the Wilmington Ethics Commission Agreed Disposition that he questioned Ms. Shabazz "on multiple occasions about the SDA grant proposal"; (5) he admitted in the Agreed Disposition that Ms. Shabazz "felt 'pressure' and a "constant push'" from him to grant the request; and (6) he admitted that at his request, while he still served as Council President, his Chief of Staff submitted a draft grant application and list of steps that Ms. Shabazz would need to take to provide SDA the money, after she assumed the office.

17.  The parties did not identify, and the Court could not locate, Delaware, secondary, or persuasive authority that defines or sets limits upon what constitutes an "official function."  Mr. Gregory cites a Delaware Supreme Court decision and a

---

[17] 41 A.3d 430, 2012 WL 983198, at *1 (Del. Mar. 20, 2012) (TABLE).

New Jersey Superior Court decision in support of his motion, but both decisions are inapposite.

18. First, Mr. Gregory contends that the Delaware Supreme Court's discussion of § 1211(3), in its decision in *Howell v. State,*[18] narrows the menu of actions that could qualify as "official functions." To the contrary, in *Howell*, the Court addressed only the scope of § 1211(2) and not §1211(3).[19] When it did, it focused on a case-specific application of §1211(2)'s elements of "refraining from performing a duty which is . . . clearly inherent in the nature of the office."[20] There, the Court addressed the term "official function" *only* to explain that conduct "inherent in the nature of an office" may differ from an "official function" as referenced in §1211(3).[21] The *Howell* decision does not define official function, comment on the nature of what is an official function, or even address the term in a way that could limit what a reasonably jury could find to qualify as an official function.[22]

19. Likewise, the New Jersey Superior Court decision does not support his motion because it addresses a similar statute to that addressed in *Howell.* In *State v. Brady,*[23] the court addressed New Jersey's version of Delaware's §1211(2).[24] As in the *Howell* decision, the New Jersey court did not define or somehow limit what could be considered an official function. Rather, the court addressed what it meant to refrain from performing a public duty, "clearly inherent in the nature of [a public

---

[18] 421 A.3d 892 (Del. 1980).

[19] *Id.* at 897.

[20] *Id.* at 895.

[21] *Id.* at 896-98.

[22] *See id.* at 897 (providing only that "the offense of official misconduct under § 1211(2) is not confined to the failure of a public servant to perform his official powers, functions or duties").

[23] 172 A.3d 550 (N.J. 2017).

[24] *See id.* at 556 (addressing New Jersey Statutes Annotated section 2C:30-2b, which provides similarly to Delaware's statute, that a public servant commits "official misconduct" when he or she refrains from performing a duty which is imposed upon him by law or inherent to his office).

8

servant's] office."[25]   There, the allegations centered on a judicial officer's action when she allegedly hid a wanted individual in her home.[26]   Based on the lack of a nexus between the courtroom and the conduct, the New Jersey Superior Court held that the prosecution insufficiently defined, for a grand jury, what duty was inherent in the judge's office.[27]   In Mr. Gregory's case, his successful attempt to steer money from the Fund to SDA had a clear nexus to his office.   As a result, nothing in the *Brady* decision supports the premise that the judge, as opposed to the jury, should have decided this matter.

20. In summary, based on the evidence at trial, viewed in the light most favorable to the State, the jury reasonably found that Mr. Gregory's email to his then Chief of Staff and President-elect Shabazz constituted an official function of his office.   Because Mr. Gregory challenges the sufficiency of the evidence as to no other element, his motion for judgment of acquittal must be denied.

**WHEREFORE**, for the reasons discussed above, Defendant Theopalis K. Gregory's motion for judgment of acquittal is **DENIED**.


**IT IS SO ORDERED.**


/s/Jeffrey J Clark
Resident Judge


oc: Prothonotary
sc: Counsel of Record

---

[25] *Id.* at 562.

[26] *Id.*

[27] *Id.* at 567; *c.f. Howell*, 421 A.2d at 898 (finding, what is in essence a common law duty, inherent in all public offices, to refrain from spending public money or resources for personal use).